May it please the court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Antonio Almeida who fled his native India after suffering a long train of abuses at both the hands of the Indian police and more importantly, for our purposes, certain Hindu fundamentalists because of two things. First, his opposition to the building of a scrap metal plant in his village and secondly because of his Christian faith. The Board of Immigration Appeals suggested that the persecution that he'd suffered at the hand of these Hindu fundamentalists wasn't persecution because it wasn't on account of political opinion. They admit that he was targeted because he was fighting to close down a factory in his village but they didn't think that his activities in opposition to that factory constitute political activity. You can easily get around that, can't you? With the June 2000 incident? Well, yeah. Or that his family was bothered on Christmas Eve? Well, that goes to the religion issue. Well, isn't that what you're really going to, religion? Well, I think there are two things here. First, I want to address the political opinion part because I think they're just plain out wrong on that as well. The opposition to the factory, I mean, first off, he testified on page 113 that his opposition to the plant was political. He said it was close to the schools, it caused pollution, and it was a threat to the groundwater in the village. He got together with other citizens in town and they formed the Citizen Action Committee, a political organization. This was a high-profile issue in their village. He said that the whole village were members of this action committee. That's on page 174. They were engaged in classic political activity. They were protesting in the streets and as a result, they were attacked and the board admits they were attacked for this activity. This seems to me to be a classic case of persecution on account of political activity, although it's local political activity, it's political activity. On the religion point, I want to focus on that last sentence in the second paragraph of the board's decision where they say that with respect to the remaining incidents with Shiv Sena, the respondent did not suffer any significant harm, and as such, we find that these incidents don't rise to the level of persecution. Now, on that, I feel like our brief doesn't do justice to this because there are five separate incidents that the board should have been considering, and they needed to consider all these things cumulatively. I mean, the first one is October 1999, where he is participating in a demonstration to welcome the Pope. He's accosted by these Shiv Sena activists who accuse him of wanting to convert Hindus to Christianity. He's told that they want to kill him, and then he's beaten. He and his friends are kicked and beaten with hockey sticks. The second incident, the one that you're referring to, Your Honor, is this June 2000 incident, and again, these have to be considered cumulatively, and the board didn't do that. Let me stop you just a little bit. The BIA, in your mind, did it address whether the incidents rose to the level of past persecution? It seemed to me that the BIA did not concentrate on the level of persecution, but instead concentrated on whether it was one of the categories that needed to be. Not in this particular instance, Your Honor. If you look at that second paragraph on page two of the board's decision, and that's the sentence that I'm focused in on because I think this is, you know, one of the more egregious. Well, I've looked at this pretty carefully, so I don't really need to look at it again. What they say is, with respect to the remaining incidents with Shiv Sena, and these are the incidents that I'm going through, the respondent did not suffer any significant injury or harm. As such, we find these incidents do not rise to the level of persecution. So with respect to these five incidents that I'm describing, they're not contesting the unaccounted part of it. They're saying they don't rise to the level of persecution. And that's hard to sustain because in this June incident, again, he's protesting a bombing in a church. Shiv Sena finds them at the demonstration, and they attack them, and according to his declaration, with steel rods, chains, sticks. And as they're doing that, they raise slogans against Jesus and the Pope. Then December 24th, they come to his home. They enter his home. They throw stones at the house. They destroy all the Christmas lights. And then two things that we didn't really mention in our brief, but I think they're important. After they reported that, you know, incident relating to the destruction of the Christmas lights to the police, these Shiv Sena guys come back in June of 2002. They broke down the door of his house. They started kicking, and this is where they started kicking him and his family members. And then finally, the last incident is this March 2004 incident where he was parading a statue of the Virgin Mary around town. Again, classic religious behavior. Again, he's accosted. He said he was slapped, kicked, and threatened. These things, you combine these five incidents, clearly they rise to the level of persecution. And that section there where the board's saying that these aren't serious enough to constitute persecution, I'd say there's compelling evidence to the contrary. So, you know, I think the court has to find that there's past persecution in this case. And then the real issue is, well, is the alternative finding of the board, can that be sustained? Because the board also said that even if there's past persecution, the immigration judge was correct in suggesting that the government had met its burden of establishing that he could safely relocate, and it's reasonable to expect him to do so. Right. Now, on that, I think the board and the IJ made two basic fundamental problems. I mean, first, they never identified any or suggested any particular place in India that he could go and live safely. And I'll come back to that in a second. But the judge has to be a little bit more specific besides saying, well, it's a big country. I'm sure there are places that you could go to. He never suggested any particular place. Well, what surprises me here is that if he was so fearful of his life, why did he come back to India two times, twice? That particular issue is not before the court, Your Honor, because I understand, you know, why that might concern you. But, you know, oftentimes it's difficult to make that final break with your home country and your family. But in this particular case, they accepted his testimony as credible. They accept that he presently has a subjective fear of return. The only issues before the court are those raised by the board's opinion. And the board's opinion raises simply, was he persecuted in the past? I think there's compelling evidence that he was. And then secondly, you know, is there an analysis here that can be sustained as to whether he can relocate? And, you know, as I was saying, with respect to relocation, the judge never suggested there's any particular place that he could relocate. And that's a big problem, because without knowing what the suggested place of relocation is, we can't analyze the reasonableness of relocation. And the regulations make this clear, because in analyzing the reasonableness of relocation, the first thing that we're supposed to do is consider whether the person might suffer serious harm in the place of suggested relocation. But here, there is no suggested place of relocation. The judge just he didn't go there. He just talked about general country conditions and said, well, I'm sure there could be a place. But in my view, by doing that, essentially he's putting the burden back on us to prove that there's no place in India to which he could safely return. Well, but the evidence that he puts in his report, which we have to look at, says the party in power at the time is gone. The party in power now pledges to respect the country's traditions of secular government, religious tolerance, pay particular attention to the rights of the religious minorities. Low-profile people have no reason to fear persecution at all. And if I could interrupt, that's the one thing he did say, Your Honor, is that. Well, he did say that, and he also said the other stuff. Well, and he may have said that in summarizing some of the evidence. But when he's in the portion of the opinion that's adopted by the board, pages 15 through 19, that's not mentioned. The focus in that is simply this one thing. All that other stuff. Well, and the last was that he could even relocate without notification. Yes. No one's disputing that he might be able to move somewhere within India, Your Honor. That's not the question. The threshold question is, did the IJ identify a place where he could be safe? There's no evidence here. I'd encourage you to expand the inquiry. You said it at the beginning, but you kind of let it drop. The question is not only is there somewhere in India where he could be safe. The question under the regulations and under our case law is whether it is reasonable to expect him to do so. So in that inquiry about reasonableness, we look at family ties. Does he have family elsewhere? We look at language. We look at all kinds of things having to do with non-safety issues. Now, he's from Goa. He speaks a language that is, I think it's Kokani, not spoken widely in India. He speaks some English, but while English is the lingua franca of India, it's that of the educated classes. So it's not at all clear that he's going to get along very well speaking a kind of mediocre English. He's had 10 years, but it's pretty clear from the translation and so on that his English is okay but not great. He's going to leave behind all of his family. So this is not just a question of safety. No. And I agree with that, Your Honor. But if I could make one final point. I mean, some of the stuff that you're talking about there, Your Honor, it really doesn't go to whether he would be safer in some other part of the country. That's more an analysis about whether conditions have changed. And these are two distinct things. The BIA here never suggested that country conditions had gone through a fundamental change, which is the standard with regard to what you're talking about here. Instead, they said he could relocate. And the question there is, is there evidence that he would be safer in some other part of the country than he was in Goa? Right. And that requires two things. First, it requires a suggestion as to what particular part of the country are we talking about. And then secondly, there has to be proof that he'd be safer there than he was in Goa. The judge didn't point to a single thing. He pointed to that document that said low-level people are not in danger. But that's also true in Goa. It doesn't suggest that he's going to be any safer in any other part of the country. There's not one scrap of evidence. He didn't point to one thing. He didn't even attempt to, to show that this guy would be safer in some other part of the country, some undefined place that he never mentioned, than he would be in Goa. Okay. We got it. Okay. Thank you.  May it please the Court, Anna Nelson for Respondent, Attorney General. The issue of whether Almeida can reasonably and safely relocate in India is an independent and dispositive issue in this case. And the Court, and if the Court decides the record supports the agency's conclusion on that issue, it must deny the petition for review. And is it the government's, I think it's the government's burden to show that he may relocate? It is in this case if the Court finds, or if the agency, or if the government is the persecutor, or if he's demonstrated past persecution. That's right. But if we get to the question as to whether relocation defeats the claim, that presumes that we've already found that there's sufficient persecution and so on. So for my question, it is assuming that he's shown past persecution, da-da-da-da-da, and now we're on whether the ability to relocate defeats his asylum claim, it's your burden to show that he may relocate, correct? Right. It's the government's burden. Right. But the record must compel the conclusion to reverse that. And as Your Honors have already mentioned, there's a lot of general evidence that he can relocate. The government's supporting religious tolerance. There's been all these changes since. Well, Mr. Job's point was the point on relocation was not made by the government that life has changed. It was that he can relocate now. It's a different question as to whether or not there's been a change. I mean, I understand the changed conditions is also something that will help the government, but that's not the argument. The argument is relocation. Right. And the IAJ did go through those factors, and they do go to relocation. But also individually, the record shows that all of the harm that occurred to him happened in that town. All of the events happened in that village. As was also mentioned, he came back in 2004 and stayed with relatives, and there were apparently no problems. So in his briefs, his main argument was that he would have to file some sort of record or police report if he moved anywhere. The background evidence shows that there's no registration requirements, and there's also no evidence that anyone would look for him other than his house. He was not targeted anywhere else. Any incidents that happened to him, the harassment all happened. There was throwing rocks at his house. And then the two incidents with police happened after protest and were very specific, and there was no evidence that the police ever searched for him other than those two. What about the point that we don't consider only safety with respect to relocation? It's a broader question as to whether it's reasonable to expect that he should relocate. Right. And the IJ also made those decisions. The IJ addressed that he knows English and some Hindi. Did he address that he apparently has no family members outside of Goa? That specific requirement was not, or that specific fact was not addressed. Did he address the social difficulties that someone relocating from Goa, speaking Kokaria, his native language, and some English might face elsewhere? Nobody did say he knows some English, he knows some Hindi. He's traveled extensively to other countries. He resettled in the United States. Yeah, but traveling to other countries and coming to the United States doesn't tell us whether he can go elsewhere in India reasonably under the criteria given to us by the regulations. There, right, and as you also noted, the regulations say the infrastructure, the social and cultural constraints, and it's, I mean, the English speaking, the ability to relocate somewhere else, I mean, they didn't discuss India specifically, but it's the same, presumably the same skills and social ability. Say again, I missed that last point. The English, the language abilities and the ability to settle somewhere else would presumably transfer also to resettling in your same country. And also the discussion... I still don't understand, what are you saying? His ability to travel extensively and resettle somewhere else, presumably there would be no social and cultural constraints within India as well. Why are you saying there's presumably no social and cultural constraints to travel within India? I was just, as part of the reasonableness factors. But you're saying that there are no constraints. That doesn't make any sense. He doesn't, he speaks a very localized language in India. He has family ties only in the Goa region. Right. And you're saying that there are no constraints on his leaving. Those are constraints. Right. Whether they're serious enough is a different question. Right. And those are just two factors. And also opposing counsel was arguing that the agency didn't specify what location or what part of India he could go back to. And I'm not aware of anything that requires the agency to relocate someone who's going back in their analysis. It's more, it's the safety which the country conditions show that the government and it's generally, there are many Christians, it's reasonable to relocate. And then the reasonableness factors. I guess you're suggesting that if I review this IJ decision very carefully that I'm going to find that the IJ talked about infrastructure, geographical limitations, social and cultural restraints, age, gender, health, social and familial ties. I mean I looked to see if that was in each part of what he talked about and I couldn't quite find it. So I'm wondering if he really made the findings he needed to make. Because the BIA didn't help him. All they said was what he said is true and then they refer to page 20, which doesn't really say anything about what I'm talking about. So I'm looking at his stuff. And under the regulations, 1208.13, that describes the factors that can be considered for reasonableness and it says should consider but are not limited to considering and it lists all those things. They may or may not be relevant depending on all the circumstances of the case. So there's really no requirement that the IJ or the board needs to list every single factor and decide whether it applies. And in this case the IJ considered what was relevant in the case and determined based on the totality of the circumstances that it was reasonable to relocate. Now you say the IJ considered all these things. He didn't reveal in terms of what he said that he considered all these things. I mean he doesn't really talk about, for example, family ties. He doesn't really talk about the difficulties that someone, speaking only Kokkari and English with limited Hindi, is going to face. I mean he might have considered them, but he didn't say anything. That is correct. Do you think those aren't important? Not in a... I mean my worry is that I kind of focused in on that because I think that's the ultimate point. Why worry about the rest of this case if you're going to go there? I think the record doesn't compel the conclusion. The petitioner has not set forth any of these factors. He hasn't made any claims that these things are unreasonable or that there are these constraints or things. And so I don't think that the record compels the conclusion that... But it's your burden. It isn't the petitioner's burden. That's what I was going to say. It's yours. Right. But if these things were... I mean there's no evidence in the record that what the IAJ considered was relevant and it supports a claim that it's reasonable and without being presented with evidence that it's not, I don't think that it supports a decision in the other way and the record compels the conclusion in the other way without having any evidence of that before the agency. You've got a minute left. Do you want to talk about whether or not there's been persecution? I'll tell you where I'm coming from. It's pretty clear that the reaction to the protests to the plant were reactions to political activity. It's also pretty clear that there was some religious motivation for the protests to the plant because it's his Christian group that's central in the protests. It's also true that the first time he was taken into the police, they asked him to name the religious leaders and he refused to do so and thereafter, in fact his word is so, they beat me, stretched my legs, threw chili powder on me. It sounds to me as though we've got two grounds, both political and religious and it sounds to me as though we've got some pretty bad treatment by the government and by this Hindu fundamentalist group. So, I mean, it seems to me that we've got past persecution. Do you disagree and why? I disagree and I would like to say it's parisimova which describes the one central reason standard. It needs to be one central reason ground. One of the central reasons. One of the central reasons. It sounds like I've got two possible central reasons, political and religious. Well, and the political wasn't exhausted before the court and it wasn't a government actor. They were protesting a private factory. So I think it's arguable whether that actually is political and it wasn't really exhausted or brought up before the agency so the agency didn't make that finding. And parisimova said that in order to be one central reason, a test is whether the persecutor would not have harmed the applicant if the motive did not exist or if standing alone it would have led the persecutor to harm the applicant. And I think if you look at the religion, if he was protesting these things, it appears, the two most egregious things that happened were the police arresting him and it really doesn't seem, if you take religion out of it and he was just protesting, he probably still would have been arrested or if he wasn't protesting, it appears, the police would not have targeted him based on religion or the gundas would not have. And then to sum up quickly over my time, the record does not compel the conclusion that religion or another protected ground is a primary essential motive for any acts that happen to him. And also regardless of the court's finding on nexus, the court compels the conclusion that he can safely be located in India. And therefore, this petition forgives. Thank you. Mr. Job, would you like one minute? I just want to reiterate, Your Honor, that the judge never suggested exactly where this guy could relocate. And without that, there's no possibility. It puzzles me that the judge has to specify a particular place. Where in the regulations or our case law does it say the judge has to specify a particular place? Well, the regulations say, Your Honor, that the government has to prove that he could avoid persecution by relocating to another part of his country, another part. And then in terms of assessing reasonableness, and you can't really assess the reasonableness of relocation until you know where the guy is expected to go. The first, the threshold consideration there is whether the applicant would face other serious harm in the place of suggested relocation. And that makes sense because unless you know where the government is suggesting this guy should relocate, you can't talk about reasonableness. If the guy suggests, if the judge is suggesting, well, he'd go to Kashmir, well, there's a war going on in Kashmir. There's war in many, many Indian states. We need to know with some specificity, it doesn't have to be a city, but a region at least, what we're talking about so we can actually address the question of reasonableness. Okay. Thank you very much. The case of Almeida v. Holder is now submitted for decision.
judges: Mills, Fletcher W. , Smith N. R.